Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 266 | DATE | 11/27/2001 |
| CASE TITLE | JOHNNY R. JONES vs. ILLINOIS DEPARTMENT OF TRANSPORTATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Defendant's motion (24-1) for summary judgment is granted. Motion (27-2 and 32-1) for leave to file and to extend are granted.**
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | DEC 04 2001 | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | 01 DEC -3 PM 5:12 | date mailed notice | |
| DW | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



JOHNNY R. JONES,

Plaintiff,

v.

ILLINOIS DEPARTMENT OF
TRANSPORTATION,

Defendant.

No. 99 C 0266
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff, Johnny R. Jones, brought this action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., alleging (1) discrimination because of his race, black, (2) subjection to a hostile work environment, and (3) retaliation because of his racial discrimination complaints. Defendant, Illinois Department of Transportation, ("IDOT"), moves for summary judgment, which is granted on all counts for the reasons stated below.

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I will review the evidence in the light most favorable to the non-moving party, as I am required to do.

### Race Discrimination Claim

Racial discrimination may be proven in two ways: direct evidence of racial discrimination or through the indirect burden-shifting method as laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Both parties agree that there is no direct evidence of racial discrimination, so I must turn to the second method. To establish a prima facie case of racial discrimination, Mr.



Jones must show that (1) he is a member of a protected class; (2) he was qualified for the job in question or was meeting IDOT's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) IDOT treated similarly situated people not in the protected class more favorably. *See Bragg v. Navistar Int'l Transportation Corp.*, 164 F.3d 373, 376 (7th Cir. 1998). Neither party disputes that Mr. Jones is a member of a protected class and that he was meeting IDOT's performance expectations. To establish the third and fourth elements of this test, Mr. Jones makes two assertions. First, he alleges that during his employment with IDOT as a temporary highway maintainer, IDOT intentionally hired permanent employees only during time periods during which Mr. Jones and other black applicants were not eligible for permanent hire. Second, Mr. Jones alleges that IDOT employee Vince LaRusso forced him to patch potholes in exposed traffic while allowing his white co-workers to refuse the task.

To apply for permanent hire, candidates who are not state certified employees must participate in the state's open competitive hiring process which involves an application and examination that is graded on a scale descending from A to C. When a permanent highway maintainer position becomes open, preference is given in the following order: veterans with an "A" grade, non-veterans with "A" grade, veterans with a "B" grade, non-veterans with a "B" grade, etc. When positions were open during the period of time in question, Mr. Jones, who is not a veteran, had an exam grade of B. Because there were non-veteran candidates with an "A" grade available, IDOT hired those individuals. Mr. Jones argues that IDOT intentionally chose to hire permanent employees at times when he and other black candidates had a "B" grade, and he contends that since IDOT did not fill positions when he had an "A" grade, he is entitled to this inference. This, however, is not enough to support an inference of discriminatory hiring

2

practices. Mr. Jones does not argue, nor does he offer any evidence that IDOT knew all applicants' identities and test scores before deciding to fill positions. Additionally, in November 1999, there was an opening for permanent hire, and because Mr. Jones had an "A" grade and there were no "A" grade veteran applicants, IDOT hired Mr. Jones as a permanent highway maintainer, and he continues to hold this position. There has been no evidence that IDOT was inconsistent in their hiring practices, and Mr. Jones does not address the fact that during the times when IDOT did not fill positions, all similarly situated individuals outside of his protected class were equally deprived of permanent employment.

Mr. Jones' allegations regarding pothole patching also fail to establish a prima facie case for racial discrimination. Even if I accept Mr. Jones' assertion that this practice constitutes an "indice[] that might be unique to a particular situation," rendering it an adverse employment action under *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993), there is no evidence that similarly situated non-black individuals were treated more favorably. It is undisputed that Mr. LaRusso also ordered white employees to patch potholes in exposed traffic. Although some of these individuals successfully refused to do so, Mr. Jones' failure to make the same refusal was based on his own belief that permanent and temporary highway maintainers had different privileges. Also, Mr. Jones does not dispute that Mr. LaRusso had a legitimate, non-discriminatory reason for asking employees to patch potholes in exposed traffic, which was to complete work as quickly as possible. Even if Mr. LaRusso incorrectly believed that employees were not in any danger because they could see oncoming traffic, this mistake does not indicate discriminatory intent or disparate treatment.

Because Mr. Jones has failed to establish a prima facie case of race discrimination, summary judgment on this claim is granted.

**<u>Hostile Work Environment Claim</u>**

To establish a prima facie case for a hostile work environment claim, Mr. Jones must show that (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe and pervasive so as to alter the conditions of Mr. Jones' employment; and (4) there is a basis for IDOT's liability. *Mason v. Southern Ill. Univ.*, 233 F.3d 1036, 1043 (7th Cir. 2000). At issue is the third element of this claim and whether eleven racial comments that occurred over a seven-year period constitute "severe and pervasive" harassment. Title VII protects employees from "conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive." *Ngeunjuntr v. Metro Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (citation omitted). In determining whether an environment is sufficiently hostile, courts look at the totality of the circumstance, which include the frequency and severity of the discriminatory conduct; whether it is physically threatening or humiliating as opposed to merely offensive; and whether it unreasonably interferes with work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

If I accept Mr. Jones' version of the facts, Mr. LaRusso and Frank Klupshas, another IDOT employee, are guilty of eleven instances of racially discriminatory conduct over the course of seven years. Most of this conduct involves Mr. LaRusso's joking references to things such as black comedy and apes. The Seventh Circuit has held that "relatively isolated instances of nonsevere misconduct will not support a claim of hostile environment." *Ngeunjuntr*, 146 F.3d at

4

467 (citation omitted). Although Mr. LaRusso's and Mr. Klupshas' alleged conduct is highly inappropriate, I do not find that the severity or frequency of these allegations rise to the level necessary to sustain a hostile environment claim.

Even if I were to find that Mr. Jones was subjected to a racially hostile work environment, IDOT is not liable for the alleged conduct of its employees because Mr. LaRusso and Mr. Klupshas were not supervisors. It is well-established that employer liability in the harassment context depends on whether the harasser was a supervisor or co-worker. *Faragher*, 524 U.S. at 2292-93; *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). To be a true supervisor, "one must be entrusted with at least some of the power to hire, fire, demote, promote, transfer, or discipline–authority of a substantial magnitude." *Hawkins v. Maximus, Inc.*, 2000 WL 1898494 at *2 (N.D. Ill. 2000) (citing *Parkins*, 163 F.3d at 1034). Neither Mr. LaRusso nor Mr. Klupshas could hire, fire, demote, promote, transfer, or discipline Mr. Jones or any other employee.

Hence, IDOT can only be held liable for its employees' conduct if it was negligent in discovering or responding to the conduct. *See Zimmerman v. Cook County Sheriff's Department*, 96 F.3d 1017, 1018 (7th Cir. 1996). Examining the facts before me, I do not see evidence of such negligence. It is undisputed that IDOT was not aware of Mr. LaRusso's conduct until IDOT's Civil Rights Officer investigated a complaint regarding Mr. LaRusso from Mr. Jones' co-worker. During this investigation, Mr. Jones was interviewed, and at that time he reported two of the alleged incidents involving Mr. LaRusso but never reported any additional incidents involving Mr. LaRusso or Mr. Klupshas. After this investigation, IDOT charged Mr. LaRusso with conduct unbecoming a state employee and suspended him for three days without pay; it

conducted training seminars for managers and employees about diversity in the workplace; and representatives from IDOT's Civil Rights Office visited facilities throughout Illinois to educate employees about IDOT's zero-tolerance policy for discrimination and harassment in the workplace. Subsequently, Mr. Jones was not subjected to any additional misconduct by Mr. LaRusso. Hence, I conclude that IDOT would not be liable for the alleged harassing conduct.

Finally, even if I were to accept Mr. Jones' allegation that Mr. LaRusso was a supervisor as defined in the Title VII context, because Mr. Jones was not fired, demoted, or reassigned to an undesirable position, IDOT can raise the affirmative defense laid out in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). This defense has two elements: (1) the employer must have exercised reasonable care in preventing and promptly correcting the harassing conduct, and (2) the plaintiff employee must have unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.* As I discussed previously, IDOT did act promptly in response to complaints regarding Mr. LaRusso's conduct, so the first requirement is met. Second, Mr. Jones only mentioned two of the eleven alleged instances of misconduct during his interview with the IDOT Civil Rights Officer, and he never attempted to make the other incidents known to IDOT, even after IDOT's zero tolerance policy and procedures were made known to all employees. Also, Mr. Jones' co-worker filed a complaint with IDOT's Civil Rights Office, which was addressed promptly and effectively. Clearly, there was a mechanism in place to address such complaints that was known to employees, as evidenced by the complaint from Mr. Jones' co-worker, and Mr. Jones never took advantage of it before filing his complaint with the Equal Employment Opportunity Commission. Consequently, IDOT has satisfied the two prongs of this affirmative defense, which would also

eliminate its liability for the misconduct in question and thus defeat the last element of a prima facie case for a hostile environment claim.

Because Mr. Jones has failed to establish a prima facie case for hostile work environment, summary judgment on this claim is granted.

**Retaliation Claim**

Finally, Mr. Jones alleges that IDOT (1) decided not to hire him as a permanent highway manager before November 22, 1999, and (2) subjected him to ongoing harassment in retaliation for filing his complaint. To demonstrate a prima facie case of retaliation under Title VII, Mr. Jones must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) there is a causal link between the protected activity and the adverse action. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1309 (7th Cir. 1997). The first two elements are not in dispute.

Since Mr. Jones was not subjected to any harassing conduct after IDOT's disciplinary action towards Mr. LaRusso, and he offers no evidence that he was subjected to further harassment after filing his complaint, I will only consider the failure to hire with respect to the last prong of this test. IDOT's hiring practices have already been discussed, and during the times that IDOT was hiring prior to November 22, 1999, Mr. Jones was not eligible for employment. As I stated earlier, there is no evidence that IDOT had knowledge of the exact contents of its applicant pools at all times during the period of time in question, nor that IDOT had the means to intentionally decide to hire permanent employees at times when Mr. Jones was not eligible. I cannot find a nexus between the failure to hire Mr. Jones prior to November 22, 1999, and his harassment complaint, and consequently, I must grant summary judgment on this claim.

7

For the reasons stated above, IDOT's motion for summary judgment is granted on all counts.

ENTER:

James B. Zagel
United States District Judge

DATE: 27 Nov 2000